UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PHILLIP TATE, | ) | CASE NO. 1:03 CV 0037 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| SGT. LINDA FADA, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On January 7, 2003, plaintiff pro se Phillip Tate filed this action under 42 U.S.C. §1983 against Grafton Correctional Institution ("GCI") Sgt. Linda Fada, GCI Warden Carl Anderson, GCI Mailroom Supervisor Lt. Mark Everly, Ohio Department of Rehabilitation and Correction ("ODRC") Director Reginald Wilkinson, and ODRC Chief Inspector Cheryl Jorgenson-Martinez. The case was dismissed for failure to pay the filing fee. Mr. Tate paid the fee on October 1, 2003 and the case was reinstated to the court's active docket. On April 21, 2004, the defendants filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12 (b)(6). For the reasons stated below, the Motion is granted and this case is dismissed.

**Background**

Mr. Tate alleges that in April 2001, he assisted another GCI inmate with the filing of grievances and legal actions regarding the facility's accessability to physically challenged inmates. He claims that in July 2001, he was confronted by the GCI investigator and by Sgt. Fada regarding the legal services he had provided. He alleges he was then reassigned to a less desirable job and subjected to threats and harassment. He asserts Warden Anderson violated his rights under the ADA, and subjected him to retaliation in violation of the First and Fourteenth Amendments. (Compl. at 19.)

Mr. Tate next challenges the GCI policy prohibiting inmates from acquiring a negative trust account balance in order to copy and mail legal documents. On July 31, 2001, inmates were informed of the policy and told that they should plan their legal filings to coincide with the payment of their state wages or utilize their one free envelope per week to send legal mail. Any inmate attempting to send mail with insufficient funds in his account would be subject to disciplinary action.

Mr. Tate indicates that in August 2001, he attempted to mail a response to an Opinion and Order rendered in one of his federal civil rights actions. He states he was unable to do so because he had insufficient funds in his trust account to cover the cost of the postage. He does not indicate whether he sought to use his free weekly mailing suggested in the warden's memorandum. Mr. Tate requested cash slips from Sgt. Fada who provided them to him with the instruction that the withdrawal would have to be verified. He was informed two hours later that his mail had been retrieved from the mailbox because he did not have enough funds in his account to cover the cost of postage. On August 30, 2001, a conduct ticket was written by Lt. Everly charging Mr. Tate with violating mail and visiting rules. He contends that

while questioning him about his attempt to mail the package, Lt. Everly blew cigar smoke in his face. He states that the smoke made him ill and as a result he was admitted to the infirmary for observation. The conduct charge was withdrawn on appeal.

Mr. Tate again attempted to mail a package containing legal materials in September 2001. Knowing he had a negative balance in his trust account, he sought the assistance of GCI inmate Dwayne McKnight to mail his Motion for Reconsideration to the federal court within the ten day period permitted by FED. R. CIV. P. 59(e). Mr. McKnight had agreed to mail the Motion to the court under his name thereby incurring the cost of the postage from his trust account. Sgt. Fada allegedly confiscated the sealed envelope containing the legal documents and issued a conduct report to Mr. Tate and to Mr. McKnight.

Mr. Tate asserts several claims regarding these incidents. First, he claims he has been subjected to retaliation for helping an inmate pursue an ADA claim and for assisting inmates with the filing of grievances. He claims that the policy preventing inmates from incurring negative account balances has the effect of denying inmates access to the courts in violation of the First Amendment. He states he was denied equal protection because he was punished for attempting to have inmate McKnight mail his package while Mr. McKnight was not punished. He claims that race was a factor in the decision to pursue charges against him. Finally, Mr. Tate asserts Lt. Everly subjected him to cruel and unusual punishment and is liable for intentional infliction of emotional distress.

**Exhaustion of Administrative Remedies**

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104

(6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. Grievances against the Warden must be filed directly to the Office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(L).

The decision of the Chief Inspector or designee is final.  OHIO ADMIN. CODE § 5120-9-31(L).

*Retaliation Claims*

There is no indication that Mr. Tate exhausted his administrative remedies relating to his claim that Warden Anderson retaliated against him for helping an inmate with his ADA claim, or his claim that Sgt. Fada retaliated against him for assisting inmates with the filing of grievances by "entrapping him" to mail a package with insufficient funds in his trust account. (Compl. at 11.)  Mr. Tate attaches copies of several grievances to his complaint.  None of the grievances attached to the complaint contains allegations of retaliation against Warden Anderson. Mr. Tate included a grievance, the Decision of the Chief Inspector for grievance no. 05-02-02,  which mentions Sgt. Fada, but does not provide sufficient information for the court to determine whether Mr. Tate included an allegation of retaliation in that grievance.  It merely states "I reviewed your grievance and appeal regarding the mailing of your legal pleadings and your being issued a conduct report by Sgt. Fada."  (Compl. Ex. 1.)   Inmates must specifically grieve allegations of retaliation. Garrison, No. 00-1662, 2001 WL 1006271 at *1.  Because Mr. Tate does not provide copies of the underlying grievance or the appeal to which the Chief Inspector was responding, it is impossible to determine whether the issue was raised.

*Mail Policy Claims*

There is also no indication that Mr. Tate exhausted his administrative remedies for all of his claims surrounding GCI's mail policy.  He attaches a copy of Notification of Grievance No. 02-132, which complains that the Warden's mail policy generally denies inmates access to the courts, contests the return of legal mailings by Lt. Everly and Sgt. Fada on August 31, 2001 and September 21, 2001, and claims that Reginald Wilkinson, GCI Institutional Inspector Darlene Krandall, and the Chief Inspector

-5-

failed to overturn the policy. That grievance appears to have been submitted directly to the Chief Inspector on March 27, 2002. While he does not provide a copy of the response of the Chief Inspector, the grievance has been stamped as "received" by the Chief Inspector's office. Because claims against the Warden and Institutional Inspector are filed directly with the Chief Inspector, Mr. Tate's challenge to the general policy arguably may be exhausted. There is no indication, however, that his claims against Lt. Everly and Sgt. Fada fulfill this requirement. Those claims would have to be submitted at the institutional level prior to filing an appeal to the Chief Inspector. There are no grievances attached to the complaint which suggest that these steps were taken prior to filing this action.

### *Racial Discrimination*

In addition, Mr. Tate contends that he was punished for attempting to have another inmate mail his package on September 21, 2001 to circumvent the mail policy. He claims the other inmate was not punished and asserts that he was the victim of racial discrimination. There are no grievances attached to the complaint which appear to relate to this allegation.

### *Eighth Amendment Claims*

Finally, Mr. Tate claims that Lt. Everly blew cigar smoke into his face, causing him to become ill. He attaches a copy of the Decision of the Chief Inspector dated June 17, 2002, which indicates that the underlying grievance concerned this allegation. It appears therefore that this allegation is exhausted.

### *Summary*

Consequently, Mr. Tate's claims of retaliation against Warden Anderson and Sgt. Fada, and his claims of racial discrimination are dismissed without prejudice pursuant to 42 U.S.C. § 1997e for

-6-

failing to exhaust his administrative remedies. His claims against Lt. Everly and Sgt Fada regarding their alleged denial of access to the courts have not been exhausted. Generally, if the exhaustion requirement has not been met, the claim will be dismissed without prejudice. Brown v. Toombs, 139 F.3d at 1104. If, however, the cause of action on its face clearly fails to state a claim upon which relief may be granted, the court may dismiss it on the merits without requiring exhaustion. See 42 U.S.C. § 1997e(c)(2); Id. His claims of denial of access to the courts, as well as his claim of an Eighth Amendment violation are without merit, and subject to dismissal regardless of exhaustion of administrative remedies.

### Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and construed most favorably toward the non-movant. Mayer v. Mylod, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint. Mr. Tate's First Amendment Access to Courts claims and his Eighth Amendment claim meet these criteria.

*Access to the Courts*

Mr. Tate contends that on July 31, 2001, GCI enacted a policy prohibiting inmates from

acquiring a negative trust account balance in order to make copies or mail letters and packages. He contends that because this policy is applied regardless of whether the copies or mailings were related to legal matters, it violates his First Amendment right of access to the courts. A prisoner's right of access to the courts, however, is not unlimited in scope. Knop v. Johnson, 977 F.2d 996 (6th Cir. 1992). To state a claim under the First Amendment, Mr. Tate must demonstrate he suffered actual injury as a result of this policy. Lewis v. Casey, 518 U.S. 343, 351 (1996). Furthermore, the injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus application, or civil rights action. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[1] Id. at 355.

In support of the claim of actual injury, Mr. Tate states "on or about August 30, 2001, plaintiff sought to mail a responsive pleading to an Opinion and Order rendered in a pending non-frivolous federal 42 U.S.C. § 1983 action entitled Tate v. Campbell, No. C-1-00-1041 S.D. Ohio (Magistrate King)." (Compl. at 6.) He claims that Sgt. Fada returned the mailing to him because he had insufficient funds in his account to cover the cost of the postage. The case docket from Tate v. Campbell, No. 2:00

---

[1] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

CV 1041 (S.D. Ohio filed Sept. 7, 2000)(assigned to United States Magistrate Judge Norah McCann King) reveals that Magistrate Judge King issued on Order dismissing three of the four defendants on February 7, 2001. Mr. Tate filed a Motion for Reconsideration of the Dismissal of the three defendants on February 15, 2001. There are no other Opinion and Orders issued in that case from February 7, 2001 until August 30, 2001, the date on which Mr. Tate claims he was attempting to file a responsive pleading to an Opinion and Order.[2] As Mr. Tate had already asked the court to reconsider that Opinion and Order, Sgt. Fada's failure to mail a second response would not cause injury to the case. It is possible that Mr. Tate was attempting to respond to the Motion for Summary Judgment which was filed by the defendant on August 27, 2001 when he encountered Sgt. Fada on August 30, 2001. Even under this scenario, however, there is no suggestion that Sgt. Fada's actions caused actual injury to his case. The docket also shows that Mr. Tate filed a response to the Motion on September 10, 2001. The Motion for Summary Judgment was granted on February 28, 2002.

Mr. Tate also argues that Sgt. Fada and Lt. Everly confiscated his legal mailing on September 21, 2001 causing him actual injury in the same case. Magistrate Judge King issued an Order on September 13, 2001 granting in part Mr. Tate's Motion for Reconsideration of the dismissal of three of the four defendants by reinstating the claims against one of the defendants, and denying his Motion with respect to the two other defendants. Mr. Tate alleges he "relied upon GCI inmate Dwayne McKnight to assist plaintiff by mailing a [second] Motion for Reconsideration on 9/21/01" but Sgt. Fada intercepted

---

[2] Magistrate Judge King did issue an Order on August 21, 2001, granting defendant Terry Campbell's Motion for an Extension of Time to file a Motion for Summary Judgment. The deadline for filing Motions had been set for July 31, 2001. Mr. Campbell had requested an extension of time to August 30, 2001. Mr. Tate responded to Mr. Campbell's Motion on August 6, 2001.

the package. (Compl. at 7.) Again, he fails to demonstrate an injury to his case from this action. He sought to file a Motion for Reconsideration of a ruling on a Motion for Reconsideration, for which there is no authority under Federal Rule 59(e). Moreover, he filed his second Motion for Reconsideration on November 5, 2001. It was denied. There is nothing contained in the court's docket or in the plaintiff's pleading which reasonably indicates that Mr. Tate suffered an actual injury to his case by the defendant's actions or the GCI's policy.

*Eighth Amendment*

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Id.. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. The plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As an initial matter, Mr. Tate has not established the objective element of an Eighth Amendment claim. He contends that Lt. Mark Everly blew cigar smoke in his face while returning his mail.

-10-

He states he experienced nausea, dizziness, and a headache as a result and was admitted to the prison infirmary for observation. Mere exposure to environmental tobacco smoke, without more, does not constitute a deprivation of a prisoner's constitutional rights. Scott v. District of Columbia, No. 97-7064, slip op. at *3 (D.C.Cir. April 3, 1998). The Eighth Amendment will only be implicated in such cases if the prisoner's pre-existing medical condition is such that exposing him to environmental tobacco smoke represents a serious health risk, or if he was exposed to unreasonably high levels of second hand tobacco smoke which created a risk of harm so grave it would violate contemporary standards of decency to expose anyone to such a risk. Helling v. McKinney, 509 U.S. 25,35 (1993); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). There is no suggestion that Mr. Tate's brief encounter with the smoke from a single cigar produced an unreasonably high level of second hand which would create a risk to anyone in the vicinity of the exposure. There is also no specific allegation of a pre-existing medical condition. Mr. Tate states only that he was summoned from "his medically prescribed nonsmoking housing cellblock to [Lt. Everly's Office]." He provides no information as to the type of condition from which he suffers. It is therefore difficult to determine whether his brief exposure to cigar smoke posed an objectively serious threat to his health.

Even if this court were to conclude that Mr. Tate had fulfilled the objective element of his Eighth Amendment Claim, there is no allegation in the complaint which reasonably suggests that Lt. Everly, the mailroom supervisor, was aware of the Mr. Tate's medical condition and deliberately placed his health in jeopardy. Mr. Tate suggests that because Lt. Everly summoned him from a non-smoking housing unit, he knew or should have known of his medical condition. A prisoner may be housed in a non-smoking unit for many reasons, including personal preference. An official acts with deliberate indifference when "he acts

-11-

with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. Id. at 837. Mere negligence will not suffice. Id. at 835-36. While Lt. Everly's behavior arguably may be described as offensive, that behavior alone does not suggest he acted with a sufficiently culpable disregard of a serious medical condition.

*Respondeat Superior*

Finally, the notes that Mr. Tates includes ODRC Chief Inspector Cheryl Jorgenson-Martinez as a defendant in this action. The basis of his claim is not entirely clear from the complaint, however, it appears that Mr. Tate believes she did not properly intervene to prevent or correct the alleged constitutional violations. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999). The claims against Ms. Martinez are also dismissed.

## Conclusion

Accordingly, Mr. Tate's claims of retaliation against Warden Anderson and Sgt. Fada, and his claims of racial discrimination are dismissed without prejudice pursuant to 42 U.S.C. § 1997e. His First Amendment access to the courts claims, his Eighth Amendment claims, and his claims against Cheryl Jorgenson-Martinez are dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

IT IS SO ORDERED.

    s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATE: May 3, 2005